WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


HAYDEN LEHMAN,                           )
                                         )
                          Plaintiff,     )
                                         )
        vs.                              )
                                         )
ANDREW M. SAUL, Commissioner of          )
Social Security,                         )
                                         )          No. 3:20-cv-0184-HRH
                          Defendant.     )
_____  )


## O R D E R

This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff Hayden Lehman has timely

filed his opening brief[1] to which defendant, Andrew M. Saul, has timely responded.[2] Oral

argument was not requested and is not deemed necessary.

## Procedural Background

On April 11, 2017, plaintiff filed an application for disability benefits under Title

XVI, alleging that he became disabled on January 1, 2016. However, in Title XVI cases such

as this one, onset of disability is generally "'established as of the date of filing provided the

_____

[1]Docket No. 22.

[2]Docket No. 23.

Case 3:20-cv-00184-HRH   Document 25   Filed 04/01/21   Page 1 of 28

individual was disabled on that date[.]'" Bjork v. Colvin, Case No. CV 15-362-TUC-LAB, 2016 WL 3640251, at *5 (D. Ariz. July 6, 2016) (quoting SSR 83-20). Plaintiff alleges that he is disabled due to COPD and sleep apnea. Plaintiff's application was denied initially, and he requested a hearing. After administrative hearings on March 4, 2019 and August 21, 2019, an administrative law judge (ALJ) denied plaintiff's application. On June 10, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 23, 2019 decision the final decision of the Commissioner. On July 27, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on July 6, 1962. Plaintiff was 54 years old at the time he filed his application for benefits. Plaintiff has a GED. Plaintiff was in special education classes for reading and social studies while in school. Plaintiff's past relevant work includes work as a dog food cook, a bagger, a dishwasher, and a home attendant.

## The ALJ's Decision

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[3]

---

[3]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently

(continued...)

-2-

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 11, 2017, the application date. . . ."[4]

At step two, the ALJ found that plaintiff had "the following severe impairments: asthma/chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), obesity, and a somatic symptom disorder. . . ."[5] The ALJ found that plaintiff's "gastritis/esophagitis, compression fracture of the thoracic spine, right shoulder pain, mild cognitive impairment, and an attention deficit disorder constitute at most non-severe impairments."[6]

---

[3](...continued)

> severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[4]Admin. Rec. at 17.

[5]Admin. Rec. at 17.

[6]Admin. Rec. at 19.

Case 3:20-cv-00184-HRH   Document 25   Filed 04/01/21   Page 3 of 28

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[7] The ALJ considered Listings 3.02 (chronic respiratory disorders), 3.03 (asthma), 3.00P (sleep-related breathing disorder), and 12.07 (somatic symptom and related disorders).[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had a mild limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a moderate limitation in terms of his ability to concentrate, persist, or maintain pace; and a moderate limitation in terms of his ability to adapt or manage himself.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with only occasionally climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. The claimant can otherwise engage in frequent balancing, stooping, kneeling, crouching, and crawling, but is limited in terms of environmental conditions in that he needs to avoid concentrated exposure to humidity and irritants such as fumes, odors, dusts, gases, and poorly-ventilated areas. In addition, the claimant's work is limited to that involving only

---

[7]Admin. Rec. at 19.

[8]Admin. Rec. at 19.

[9]Admin. Rec. at 19-20.

routine tasks that are taught by demonstration or visual format.[10]

The ALJ discounted plaintiff's pain and symptom statements because plaintiff had not sought "specialized care by a pulmonologist despite being advised to do so[,]" because his statements were inconsistent with the medical evidence, and because his statements were inconsistent with his reported daily activities.[11]

The ALJ found Dr. Kidder's opinion,[12] Dr. Cornelius' opinion,[13] NP Schuerman's opinion,[14] and the Glick/Lester opinion[15] unpersuasive.[16] The ALJ found Dr. Fraser's

_____

[10]Admin. Rec. at 20.

[11]Admin. Rec. at 22.

[12]Dr. Kidder's opinion is discussed below in detail.

[13]Dr. Cornelius' opinion is discussed below.

[14]NP Schuerman's opinion is discussed below.

[15]On August 8, 2018, PAC Glick, who was supervised by Dr. Lester, wrote that plaintiff's

> condition is frequently exacerbated by smells and perfumes. His asthma exacerbations have required several emergency room visits. He is currently on a multiple treatment regimen and continues to struggle with his breathing. He has been referred to a specialist, pulmonologist. At this time he is not capable of working a full time job that is located in a public space due to his breathing condition. This determination may need to be reassessed by the pulmonologist.

Admin. Rec. at 423.

[16]Admin. Rec. at 22, 25.

opinion persuasive.[17] The ALJ found Dr. Russell's opinion[18] unpersuasive.[19] The ALJ found

Dr. Kiehl's opinion persuasive.[20] The ALJ also found Dr. Buechner's opinion persuasive.[21]

At step four, the ALJ found that plaintiff was "capable of performing past relevant

work as a kitchen helper/dishwasher or home attendant."[22] This finding was based on the

testimony of the vocational expert.[23]

The ALJ also made alternative step five findings, finding that there was other work

that plaintiff could perform, such as that of a laundry worker.[24]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in

the Social Security Act since April 11, 2017, the date the application was filed. . . ."[25]

---

[17]Admin. Rec. at 26. Dr. Fraser's opinion is discussed below in detail.

[18]On November 28 and December 10, 2018, Heather A. Russell, Psy.D., did a neuropsychological assessment. Dr. Russell opined that "there are no valid or identifiable neuropsychological concerns preventing [plaintiff] from obtaining gainful employment." Admin. Rec. at 582.

[19]Admin. Rec. at 26.

[20]Admin. Rec. at 26. Dr. Kiehl's opinion is discussed below.

[21]Admin. Rec. at 23. Dr. Buechner's opinion is discussed below.

[22]Admin. Rec. at 27.

[23]Admin. Rec. at 27.

[24]Admin. Rec. at 27-28.

[25]Admin. Rec. at 28.

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ failed to include limitations that she assessed in the RFC and the hypothetical posed to the vocational expert. "An ALJ may use the testimony of a vocational expert to determine whether the claimant can perform past relevant work."

Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014). "An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that 'contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record.'" Id. (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)). "However, if an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony 'has no evidentiary value.'" Id. (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir.2008)). "In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." Id.

The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with only occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds. The claimant can otherwise engage in frequent balancing, stooping, kneeling, crouching, and crawling, but is limited in terms of environmental conditions in that he needs to avoid concentrated exposure to humidity and irritants such as fumes, odors, dusts, gases, and poorly-ventilated areas. In addition, the claimant's work is limited to that involving only routine tasks that are taught by demonstration or visual format.[26]

The RFC tracks the first hypothetical that the ALJ gave to the vocational expert, William Weiss, at the administrative hearing. The ALJ gave Weiss a hypothetical person who

> is limited to medium work with the occasional climbing of ramps or stairs. No climbing of ladders, ropes or scaffolds.

---

[26]Admin. Rec. at 20.

-8-

Frequent balancing and stooping, kneeling, crouching, and crawling. This person is limited to avoiding concentrated exposure to humidity. Is to avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. This person is . . . limited to work that is routine . . . where this person is shown or taught tasks either by demonstration or visual format.[27]

Plaintiff argues that the ALJ should have included additional limitations in both the RFC and the first hypothetical. In particular, plaintiff argues that the ALJ failed to include the mild limitations that she found plaintiff had in understanding, remembering, and applying information and in interacting with others and the moderate limitations she found plaintiff had in terms of concentrating, persisting or maintaining pace and in adapting and managing himself.[28] These are the limitations that the ALJ assessed at step two, but plaintiff argues that these limitations should have been used in shaping the limitations included in the RFC and the first hypothetical. In the RFC, the ALJ limited plaintiff to "routine tasks that are taught by demonstration or visual format."[29] These are also the limitations that the ALJ included in the first hypothetical.[30] But, plaintiff argues that this is an inadequate attempt to account for his moderate limitation as to adapting or managing himself and his mild limitation as to understanding, remembering, and applying information. Plaintiff also argues that the ALJ

---

[27]Admin. Rec. at 73-74.

[28]Admin. Rec. at 19-20.

[29]Admin. Rec. at 20.

[30]Admin. Rec. at 73-74.

-9-

made no attempt in the RFC and the first hypothetical to account for his mild limitation as to interacting with others and his moderate limitation as to concentrating, persisting, or maintaining pace.

As to the ability to interact with others, plaintiff argues that this area of functioning includes more than interacting with the public. Plaintiff contends that it also includes functions such as

> cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(2). Plaintiff argues that the ALJ failed to include any limitations related to this area of functioning in the RFC or the first hypothetical.

Plaintiff makes a similar argument as to the moderate limitation as to concentrating, persisting, or maintaining pace. "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(3).

> Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a

> full day without needing more than the allotted number or length
> of rest periods during the day.

Id. Plaintiff argues that the ALJ failed to include any limitations in the RFC or the first hypothetical that related to his moderate limitation in this area of functioning.

The Ninth Circuit has stated that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). The same would apply to other "paragraph B" areas of functioning. Here, Dr. Kiehl and Dr. Buechner opined as to plaintiff's limitations related to his mental impairments. On September 22, 2017, Dr. Kiehl opined that plaintiff had mild limitations in his ability to understand, remember, or apply information; mild limitations in his ability to interact with others; moderate limitations in his ability to concentrate, persist, or maintain pace; and moderate limitations in his ability to adapt or manage oneself.[31] Dr. Kiehl also opined that plaintiff was "able to understand and remember simple tasks[;]" "is able to sustain concentration, persistence and pace for simple 1-2 step tasks[;]" "is able to interact appropriately with coworkers and supervisors[;]" and "[o]nce learned, . . . can adjust to changes in the regular work place."[32] Dr. Kiehl opined that plaintiff "is capable of the

---

[31]Admin. Rec. at 94.

[32]Admin. Rec. at 98-99.

basic mental demands of unskilled work."[33] Dr. Buechner testified at the administrative hearing and opined that plaintiff had "a mild limitation on the ability to understand, remember or apply information, interact with others, and then moderate limitations on the ability to concentrate, persist or maintain pace or adapt and manage oneself[.]"[34] Dr. Buechner testified that plaintiff should be restricted "to routine tasks" and that "if reminders were needed, I would use visual reminders . . . rather than verbal reminders[.]"[35] The ALJ's assessment of the limitations flowing from plaintiff's mental impairments was consistent with the restrictions opined to by Dr. Buechner and Dr. Kiehl. The ALJ was not required to include additional limitations based on her "paragraph B" assessments.

Plaintiff next argues that the ALJ erred in her treatment of Dr. Kiehl's opinion. The ALJ found Dr. Kiehl's opinion persuasive because it was "largely consistent with Dr. Buechner's opinion; however, to the extent these opinions differ from one another, Dr. Buechner's opinion is found to be more persuasive given that she had the opportunity to review the complete medical evidence of record in this case for a more comprehensive view of the claimant's mental functioning versus that afforded to Dr. Kiehl."[36]

---

[33]Admin. Rec. at 99.

[34]Admin. Rec. at 56.

[35]Admin. Rec. at 56.

[36]Admin. Rec. at 26.

-12-

"[F]or claims" such as plaintiff's, which were "filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence." Loriel C. v. Saul, Case No. 2:19-cv-00316-MKD, 2020 WL 4340742, at *11 (E.D. Wash. July 28, 2020). "The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s). . . ." Id. (quoting Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68). "Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources." Id.

> The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements[.]"

Id. (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)). "Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered." Id. at *11. "The ALJ may, but is not required to, explain how the other factors were considered." Id.

"The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical

-13-

opinions given the Commissioner's elimination of the hierarchy." Tina T. v. Commissioner of Social Security, Case No. C19-6215 BHS, 2020 WL 4259863, at *4 (W.D. Wash. July 24, 2020). But, "[t]he Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion." Id. "Obviously the ALJ's reasoning must remain legitimate, meaning lawful or genuine, as it must still be supported by substantial evidence and free from legal error[.]" Id.

Plaintiff argues that the ALJ erred in discounting Dr. Kiehl's opinion in favor of Dr. Buechner's opinion because Dr. Buechner testified that she did not necessarily disagree with Dr. Kiehl's opinion.[37] Plaintiff seems to be arguing that the ALJ did not have a legitimate reason for discounting Dr. Kiehl's opinion given that Dr. Buechner did not disagree with his opinion.

The ALJ found Dr. Buechner's opinion more persuasive because "she had the opportunity to review the complete medical evidence of record in this case for a more comprehensive view of the claimant's mental functioning versus that afforded to Dr. Kiehl."[38] Given that Dr. Kiehl reviewed the medical record in September 2017 and that Dr. Buechner reviewed it in August 2019, this was a legitimate reason for the ALJ to find Dr. Buechner's opinion more persuasive than Dr. Kiehl's, particularly since Dr. Russell's

---

[37]Admin. Rec. at 57.

[38]Admin. Rec. at 26.

neuropsych evaluation was done after Dr. Kiehl reviewed the record and before Dr. Buechner

did. The ALJ did not err in her treatment of Dr. Kiehl's opinion.

Plaintiff next argues that the ALJ erred as to Dr. Kidder's opinion. Dr. Kidder

testified as a medical expert at the administrative hearing. Dr. Kidder opined that plaintiff

had the residual functional capacity to

> occasionally lift 20 pounds, and frequently lift 10 pounds. He
> could stand or walk for at least two hours in an eight-hour day.
> He could sit for six hours in an eight-hour day. I believe the
> pushing and pulling would be unlimited except for the weight
> limits that I mentioned previously. As far as postural limita-
> tions, I believe he could occasionally climb ramps or stairs. And
> never be on ladders, ropes or scaffolds. Occasionally do
> balancing, stooping, kneeling, crouching, and crawling. As far
> as manipulative limitations, I thought there was no limit as far
> as reaching, handling, fingering, or feeling. I saw no evidence
> of any visual limitations or any communicative limitations with
> hearing or speaking. As far as environmental limitations, I
> thought he should avoid concentrated exposure to extreme cold,
> heat, wetness, and humidity. I thought there was no limit as far
> as noise or vibration. I thought he should avoid all exposure to
> fumes, odors, dust, and gases. . . . And I thought that he should
> avoid concentrated exposure to hazards such as machinery and
> heights.[39]

The ALJ found Dr. Kidder's opinion unpersuasive.[40] Plaintiff argues that this was

error. Plaintiff's argument focuses on the portion of Dr. Kidder's opinion that plaintiff could

stand/walk for two hours per day and occasionally lift 20 pounds because such limitations

are not consistent with a capacity to do medium work. As set out above, the ALJ found that

---

[39]Admin. Rec. at 51-52.

[40]Admin. Rec. at 22.

plaintiff had the capacity to do a limited range of medium work, which "involves . . . frequent lifting or carrying of objects weighing up to 25 pounds[,]" 20 C.F.R. § 416.967(c), and requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday[.]" SSR 83-10.

The ALJ found Dr. Kidder's opinion unpersuasive because "it is unsupported by the remainder of his hearing testimony" and because it was "inconsistent with the record as a whole regarding the claimant's functioning[.]"[41] Plaintiff argues that these were not legitimate reasons for discounting Dr. Kidder's opinion.

The first reason the ALJ gave for discounting Dr. Kidder's opinion was that "it is unsupported by the remainder of his hearing testimony."[42] The ALJ cited to several examples in support of her finding. First, the ALJ explained that Dr. Kidder testified that plaintiff's respiratory symptoms were triggered "by certain smells, fumes, and especially smoke," but that "such symptoms appear to have been treated with several inhalers and oral medications such that the claimant has not required any hospitalizations for breathing problems during the course of the period at issue. . . ."[43] But, the fact that plaintiff did not have any hospitalizations due to his respiratory problems does mean that plaintiff was not as limited as Dr. Kidder opined. At the administrative hearing, Dr. Kidder reviewed plaintiff's

---

[41]Admin. Rec. at 22.

[42]Admin. Rec. at 22.

[43]Admin. Rec. at 22.

pulmonary function tests, his treatment with inhalers and medication, the other medical source statements, and his use of home oxygen,[44] all of which supported his opinion. Next, the ALJ cited to Dr. Kidder's testimony that in April 2019, plaintiff was riding his bike daily.[45] Although, as the ALJ pointed out, this notation appears in several treatment notes, these same notes say that plaintiff was "[n]ot exercising regularly" and/or had "poor exercise habits[.]"[46] The fact that plaintiff was riding his bike for an unknown amount of time each day does not mean that he was not as limited as Dr. Kidder opined. Finally, the ALJ cited to Dr. Kidder's testimony that plaintiff's BMI was at times lower than 30.[47] But, Dr. Kidder also recognized that at times, plaintiff's BMI was higher than 30.[48] The evidence cited by the ALJ does not provide support for her finding that Dr. Kidder's opinion was unsupported by his other testimony at the hearing. Thus, this was not a legitimate reason for the ALJ to discount Dr. Kidder's opinion.

The second reason that the ALJ gave for discounting Dr. Kidder's opinion was that it was inconsistent with the record as a whole. In support of this finding, the ALJ cited to

---

[44]Admin. Rec. at 49-50.

[45]Admin. Rec. at 49.

[46]Admin. Rec. at 525, 527, 612. One treatment note stated that plaintiff experienced "symptoms when riding his mountain bike around Jewel Lake in the summer." Admin. Rec. at 633. This note did not indicate that plaintiff was riding his bike daily.

[47]Admin. Rec. at 50.

[48]Admin. Rec. at 50.

four examples of treatment notes in which Dr. Cornelius supposedly found that plaintiff's lungs were clear and he had "nearly non-stop speech," but only one of the examples cited by the ALJ was actually a treatment note from Dr. Cornelius.[49] The other examples were treatment notes from PAC Glick which made no mention of clear lungs or non-stop speech.[50] The ALJ also pointed out that plaintiff did not "appear to have presented for specialized care by a pulmonologist despite being advised to do so. . . ."[51] The ALJ cited to an August 8, 2018 treatment note from PAC Glick that plaintiff had "seen a pulmonologist in the past but not recently or on a regular basis."[52] The record does show that there was an approximate one-year time period, between June 2017 and August 2018, when plaintiff did not see his pulmonologist.[53] But, this alone does not constitute substantial evidence supporting the ALJ's finding that Dr. Kidder's opinion was inconsistent with the record as a whole. Thus, the second reason the ALJ gave for discounting Dr. Kidder's opinion was not legitimate.

But, even if the reasons the ALJ gave for discounting Dr. Kidder's opinion were legitimate, there is still a problem with ALJ's RFC as it pertains to plaintiff's limitations related to his physical impairments. Besides Dr. Kidder's opinion, there were four other

---

[49]Admin. Rec. at 542.

[50]Admin. Rec. at 524, 551, 570.

[51]Admin. Rec. at 22.

[52]Admin. Rec. at 551.

[53]Admin. Rec. at 586, 590.

Case 3:20-cv-00184-HRH   Document 25   Filed 04/01/21   Page 18 of 28

opinions in the record related to plaintiff's physical impairments. The ALJ found three of these opinions, those of Dr. Cornelius, NP Schuerman, and PAC Glick, unpersuasive and one of these opinions, that of Dr. Fraser, persuasive. This means that the ALJ's RFC as it pertains to plaintiff's physical limitations was largely based on Dr. Fraser's opinion, as hers was the only physical limitation opinion that the ALJ found persuasive. On November 16, 2017, Dr. Fraser opined that plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs; could never climb ladders/ropes/scaffolds; could frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation.[54] The ALJ found Dr. Fraser's opinion persuasive "because [it was] supported by a discussion of the medical evidence of record existing at the initial level and [was] largely consistent with the above-described record as a whole."[55] But, Dr. Fraser's opinion was offered in 2017, just as Dr. Cornelius' and NP Schuerman's opinions were, albeit in November of 2017, rather than June of 2017. The ALJ found the latter two opinions unpersuasive, even though they were consistent with Dr. Kidder's opinion in terms of plaintiff's capacity to stand/walk and lift,[56]

---

[54]Admin. Rec. at 96-97.

[55]Admin. Rec. at 26.

[56]On June 16, 2017, NP Schuerman opined that plaintiff could stand/walk less than 2 hours per day and could rarely lift 20 pounds or less. Admin. Rec. at 459-460. On June 10, 2017, Dr. Cornelius opined that plaintiff could stand/walk for 2 hours, could occasionally
(continued...)

-19-

because they were offered in June 2017, which was prior to plaintiff quitting smoking,[57] and

the medical evidence of record shows that his respiratory conditions started to improve

somewhat after he stopped smoking. Although Dr. Fraser offered her opinion in November

2017, which was apparently after plaintiff quit smoking, the medical evidence she reviewed

would have been almost exactly the same as what Dr. Cornelius and NP Schuerman had to

consider. The only additional medical evidence that Dr. Fraser had were two treatment notes

from Dr. Cornelius, one from July 2017 and one from November 2017,[58] neither of which

indicated that plaintiff's respiratory conditions were improving. At both visits, Dr. Cornelius

continued to prescribe Dulera, Proventil, Combivent, Singulair, and supplemental oxygen.

If Dr. Cornelius' and NP Schuerman's opinions were unpersuasive because they were offered

prior to plaintiff's respiratory conditions improving due to smoking cessation, then it follows

that the ALJ should have also found Dr. Fraser's opinion unpersuasive for the same reason.

Because Dr. Fraser's opinion was based on largely the same pre-smoking-cessation evidence

as Dr. Cornelius' and NP Schuerman's opinions, it cannot constitute substantial support for

---

[56](...continued)
lift/carry less than 10 pounds, and could rarely lift/carry 10 pounds. Admin. Rec. at 420-421.

[57]Admin. Rec. at 25. Although the record is a bit ambiguous as to when plaintiff stopped smoking, there are several references that indicate that he specifically stopped in June 2017. Admin. Rec. at 524, 551, 614, 617. There is one treatment note that indicates that he was still smoking some in July 2017. Admin. Rec. at 532. There is one treatment note that says he quit in 2016. Admin. Rec. at 563. At the hearing, plaintiff testified generally that he had quit two years ago. Admin. Rec. at 66.

[58]Admin. Rec. at 529 and 533.

the ALJ's RFC as it pertains to the limitations related to plaintiff's physical impairments. Because Dr. Fraser's opinion was the only opinion the ALJ relied on in this respect, the ALJ's RFC is not supported by substantial evidence.

Plaintiff next argues that the ALJ failed to consider whether his somatic symptom disorder was causing additional mental or physical limitations.

> Somatic symptom and related disorders "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness."

Jimenez v. Comm'r of Social Security Admin., 413 F. Supp. 3d 993, 999 (D. Ariz. 2019) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07). Plaintiff argues that "[t]he ALJ did not consider whether [his] somatic symptom disorder was causing additional mental or physical limitations beyond those that would be expected based on the objective evidence."[59] But, plaintiff does not identify any additional mental or physical limitations he believes the ALJ should have included as a result of his somatic symptom disorder. Without such

---

[59]Plaintiff's Brief Consistent with the Court's Briefing Order at 12, Docket No. 22.

identification, there is no basis for finding that the ALJ failed to adequately consider plaintiff's somatic symptom disorder.

Finally, plaintiff argues that the ALJ erred in terms of the order of testimony at the administrative hearing. At the hearing, the ALJ had the two medical experts testify first, prior to any testimony from plaintiff. Plaintiff argues that this violated agency policy as set forth in the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX"), an internal Social Security Administration policy manual. HALLEX I-2-6-70(b) provides:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.

Here, the two medical experts testified prior to plaintiff testifying and the ALJ did not provide the medical experts with a summary of plaintiff's testimony as he had not yet testified. Plaintiff argues that his testimony was pertinent testimony relating to his symptoms and limitations. Plaintiff argues that the agency requires an ALJ to comply with the policies set forth in the HALLEX. SSR 13-2p provides, in pertinent part, that "[w]e require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." "SSRs are issued by the

-22-

Commissioner to clarify the Commissioner's regulations and policies." Kolvick v. Astrue, Case No. 10–1804–JCC, 2011 WL 4626014, at *9 (W.D. Wash. July 1, 2011). "Although they do not have the force of law, they are nevertheless given deference 'unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations.'" Id. (quoting Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)). Thus, plaintiff argues that the ALJ was required to follow HALLEX I-2-6-70(b) and her failure to do so was error.

Defendant argues that plaintiff's reliance on SSR 13-2p is misplaced because SSR 13-2p pertains to the evaluation of cases involving drug addiction and alcoholism, which this case does not involve. Defendant also argues that following the publication of SSR 13-2p in 2013, district courts throughout the Ninth Circuit have continued to conclude that the HALLEX is not binding on ALJs or legally enforceable by federal courts. See, James S.C. v. Saul, Case No. CV 19-5991-KS, 2020 WL 3491565, at *10 (C.D. Cal. June 25, 2020) (citing Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) (HALLEX and POMS "are not binding on ALJs and are not legally enforceable by federal courts"); Ashlock v. Colvin, Case No. 3:15-cv-05767 DWC, 2016 WL 3438490, at *5, n.2, (W.D. Wash. June 22, 2016) (quoting Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003) (noting that "the Ninth Circuit has determined the HALLEX does not impose 'judicially enforceable duties'").

As plaintiff is quick to point out, in two recent cases, the court found that the ALJ was required to comply with HALLEX I-2-6-70(b). See Steele v. Saul, Case No.

5:20-cv-0007-HRH, 2021 WL 653024, at *5 (D. Alaska Feb. 19, 2021); Quick v. Saul, Case No. 3:20-cv-0197-HRH, 2021 WL 653023, at *4-5 (D. Alaska Feb. 19, 2021). But in Steele, defendant did not argue that HALLEX I-2-6-70(b) was not binding; rather, defendant simply argued that it did not apply in that case because Steele's testimony was not "pertinent." Similarly in Quick, defendant argued that Quick's testimony was not "pertinent" because it was uncorroborated symptom testimony. In neither case did defendant argue that the HALLEX did not impose judicially enforceable duties or that the plaintiff's reliance on SSR 13-2p was misplaced because SSR 13-2p pertains to the evaluation of cases involving drug addiction and alcoholism.

Several courts have rejected arguments similar to the one plaintiff advances here in part because SSR 13-2p pertains to the evaluation of cases involving drug addiction and alcoholism. See Ronquillo v. Saul, Case No. 1:19-cv-1665 JLT, 2021 WL 614637, at *4 (E.D. Cal. Feb. 17, 2021); Mark S. v. Comm'r, Social Security Admin., Case No. 3:19-cv-00629-BR, 2020 WL 1917332, at *4 (D. Or. April 20, 2020); Jeanne E. v. Saul, Case No. 6:18-cv-01722-SB, 2020 WL 602279, at *5 (D. Or. Feb. 7, 2020); Kathleen S. v. Saul, No. 3:19-cv-00651, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020); Hollen v. Comm'r of Social Security, Case No. 3:15-cv-2357-GPC-DHB, 2017 WL 1075194, at *9 (S.D. Cal. March 22, 2017). And, "'even after the promulgation of SSR 13-2p on February 20, 2013, the Ninth Circuit has continued to cite Roberts and Lockwood for the proposition that the Agency's internal policy manuals such as HALLEX do not give rise to any legally

-24-

enforceable rights." Ronquillo, 2021 WL 614637, at *4 (quoting Kathleen S., 2020 WL 353602, at *7).

> The Ninth Circuit has maintained its determination that HALLEX "does not carry the force of law." See, e.g., Wilson v. Berryhill, 732 Fed. App'x 504, 507 (9th Cir. 2018) (declining to review an assertion of error for failure to comply with HALLEX); see also McGowan v. Saul, 833 Fed. App'x 138 (9th Cir. Jan. 6, 2021) (finding the ALJ "did not commit reversible error" by failing to comply with HALLEX "because the ALJ's noncompliance with HALLEX is not legally enforceable"); Barreras v. Saul, 803 Fed. App'x 70 (9th Cir. 2020) (finding it was "inconsequential" that the ALJ acted contrary to policies in HALLEX because the manual does not "impose[] judicially enforceable duties on either the ALJ or this court") (citation omitted).

Id.

Based on the arguments defendant has raised in this case, arguments that were not raised in Steele or Quick, the court must conclude that the ALJ was not required to comply with HALLEX I-2-6-70(b). Even after the promulgation of SSR 13-2p, the Ninth Circuit has plainly continued to take the position that the HALLEX does not create judicially enforceable duties.

But even if the court were to find the HALLEX judicially enforceable, the ALJ's failure to follow it in this case was harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination. . . .'" Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting Stout, 454 F.3d at 1055–56). "'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude

-25-

that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" Id. (quoting Stout, 454 F.3d at 1055–56). "'[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary.'" Id. (quoting McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011)). "By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate.'" Id. (quoting McLeod, 640 F.3d at 888).

Plaintiff has not shown that he suffered any prejudice by having the medical experts testify first because both experts testified that they had reviewed plaintiff's treatment records,[60] which contained sufficient information about plaintiff's current medications and symptoms. Plaintiff has not cited to any specific harm that he suffered because the ALJ did not comply with HALLEX I-2-6-70(b), other than to argue that the medical opinions offered by Dr. Kidder and Dr. Buechner were inherently flawed due to this problem. But, plaintiff must point to some specific information that he believes the medical experts did not have because they had not heard his testimony or a summary of his testimony. Because he has not done so, even if it were error for the ALJ to not comply with HALLEX I-2-6-70(b), that error was harmless.

However, the ALJ's error as to the medical source opinions related to plaintiff's limitations flowing from his physical impairments was not harmless. Thus, the court must

_____

[60]Admin. Rec. at 48, 54.

-26-

consider whether to remand this matter for an immediate award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Here, a remand for further proceedings is necessary so that the ALJ can properly

consider the medical source statements.

Conclusion

The final decision of the Commissioner is reversed, and this matter is remanded for

further proceedings.

DATED at Anchorage, Alaska, this 1st day of April, 2021.

/s/ H. Russel Holland
United States District Judge